(49 App. Div. 8.)

### DORNEY v. O'NEILL.

(Supreme Court, Appellate Division, Second Department. March 13, 1900.)

INJURY TO SERVANT—NEGLIGENCE OF MASTER—EVIDENCE.

It appeared that plaintiff was injured, while passing through a dark hall in a building in which he had been employed but a short while, by a twig, which projected from some débris loaded on a "wheeler" (a basket on wheels) stored in the hall, being driven into his eye. Plaintiff knew that wheelers were stored in some parts of the hall, but had never seen them at the place he was hurt, nor had any information that they were ever loaded with débris. Employés were prohibited from bringing matches into the building, as well as from leaving before the dismissal bell rang, and when the dismissal bell rang the lights were turned out in that part of the building through which plaintiff had to pass in going out. Held to require a submission to the jury of the question of the master's negligence.

Appeal from trial term, New York county.

Action by Henry B. Dorney against Hugh O'Neill. From a judgment entered on a dismissal of the complaint at the close of plaintiff's case and an order denying a new trial, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Charles Steckler (Levin L. Brown, on the brief), for appellant. Eugene Lamb Richards, Jr., for respondent.

HIRSCHBERG, J.   On the first trial of this action the plaintiff
recovered a verdict, but the judgment entered on it was reversed by
the appellate division in the First department.   Dorney v. O'Neill, 34
App. Div. 497, 54 N. Y. Supp. 235.   On the retrial the complaint was
dismissed by the learned trial justice at the close of the plaintiff's
case, the court saying:

"I have carefully considered the record in the case before, and, in applying
the rule laid down for the guidance of the court rendered in the appellate divi-
sion in the last appeal, I would not be warranted in submitting this case to a
jury, and I grant the motion to dismiss the complaint."

The correctness of this ruling is presented for review on the present
appeal.

It would seem, from the opinion delivered on the former appeal,.
and the record of the second trial, that the facts were not accurately
elicited on the occasion of the first trial.   As first made up, the rec-
ord evidently presented two grounds of alleged negligence on the part
of the defendant:   (1) In storing "wheelers" in the passageway
through which the plaintiff was obliged to walk at night when leav-
ing the defendant's premises; and (2) in not having the passageway
sufficiently lighted.   It then appeared that the plaintiff had been in
defendant's employ for two years before the accident, during all
which time these "wheelers," i. e. baskets on wheels, used to cart
goods about the building, had been stored in the passageway, to
plaintiff's knowledge, and that on the night in question adequate
lights, with which the passageway was furnished, suddenly and for
the first time went out, for some unexplained cause, leaving the plain-
tiff in darkness, and causing him serious injury by coming in contact
with one of the "wheelers."   As to the extinguishment of the lights,
the record then presented no facts on which defendant's negligence
could be predicated, while the risk of contact with the "wheelers" was
one which the plaintiff clearly assumed by continuing in defendant's
service with apparent knowledge that they were customarily stored
at the place where he received his injury.   On the second trial a
fuller and more accurate disclosure of the facts presents the accident
in an entirely different aspect, and requires a submission of the case
to the jury.   The employment of the plaintiff by the defendant for
the period of two years was a separate employment from the one
under which he was serving at the time of the accident, and was
before the building was constructed in which the accident occurred.
He had only been working a few weeks under the second employment
when he was injured, and it appeared without dispute that he was
not injured by contact with the "wheeler," but with certain débris
with which they were loaded at night, before being stored in the
passageways.   This débris consisted of rubbish, boards, paper, sharp
twigs used in the packing and binding of crockery, and other material
of a like character, which the porters would collect towards the close
of day, before the employés of plaintiff's class left the building at
night, and which would be removed before they returned to work in
the morning.   This material extended above and a foot beyond the
"wheelers," and, while the plaintiff was groping his way through the

dark hallway on the night in question, a sharp twig protruding from one of the "wheelers" was driven into and destroyed his left eye. It further appeared without contradiction that while the plaintiff had seen the "wheelers" in use in the building, and occasionally in some of the passageways which he was obliged to traverse in going to and from his work, he had never seen them in the hallway at the place where he was hurt, and had neither knowledge, nor any information which could suggest inquiry which might lead to knowledge, that débris or other obstructions were ever placed in the "wheelers" in any of the hallways or passages. The rules of the establishment were read in evidence, from which it appears that the bringing of matches into the building by employés was prohibited under pain of dismissal. The rules further required employés to remain in their respective places until the bell rang for dismissal, and it was satisfactorily established that each night, during all the time plaintiff was employed, one of the defendant's employés named Rohlfs, to whom that duty was apparently delegated, turned out the lights either at the time of, or shortly before, the ringing of the dismissal bell, so that the plaintiff on every occasion was obliged to pass through the hallway in question in darkness.

The duty of the master is not only to furnish his employé with a reasonably safe place to work in, and reasonably safe access and egress upon and from the premises, but also, "having control of the times, places, and conditions under which the servant is required to labor, to guard him against probable danger in all cases in which that may be done by the exercise of reasonable caution." McGovern v. Railroad Co., 123 N. Y. 280, 287, 25 N. E. 374. It cannot be said, as matter of law, that this duty has been discharged by furnishing a hallway through which the servant must pass at night and in the dark, and in which the master has caused to be placed material of such a character that involuntary contact may cause injuries as serious as that which the plaintiff has sustained. Nor can it be said that the servant, under the circumstances now presented by the record, assumes, as matter of law, the risk incident to the existence of such a hidden menace. Even if he may be held to have assumed the risk of passing through the hall in the dark, so far as darkness may involve risk, in view of the condition of the hallway, as known to him, yet he cannot be held to have assumed the risk of other dangers not disclosed, and of which there was nothing in the nature either of his employment or his surroundings to give him warning. The judgment and order should be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted, costs to abide the event. All concur.