MARY GAMBON, as Administratrix, etc., and Others, Plaintiffs, *v.* THE CITY OF NEW YORK and Others, Defendants.

Supreme Court, Bronx County, March 16, 1934.

*Kuzmier & Milan* [*R. X. Kuzmier, R. C. Cotter, S. B. Axtell* and *C. C. Loreto* of counsel], for the plaintiffs.

*Paul Windels, Corporation Counsel* [*W. C. Chanler, Barent Ten Eyck* and *Leonard M. Wallstein, Jr.,* of counsel], for the defendant City of New York.

*E. C. Sherwood* [*E. W. Bovard, F. C. Locher* and *G. Gruberg* of counsel], for the defendants P. J. Carlin Construction Company and another.

*Wing & Wing* [*Arthur K. Wing* of counsel], for the defendants Edward V. McGovern Corporation and another.

*Rao & Liggio* [*Paul Rao* of counsel], for the defendant Arc Electrical Equipment Company.

*P. S. Mason* [*Paul Koch* and *W. A. Seidl* of counsel], for the defendant Albee-Godfrey Whale Creek Company.

HOFSTADTER, J.  This action is brought to recover damages for the death of nine workers resulting from the sinking of the steamship *Observation* on September 9, 1932.  Plaintiffs having rested, all the defendants (other than English and Forsythe, who were not served) moved for a dismissal of the complaint, on the ground that as a matter of law no liability has been established.

The city, owner of Rikers island, entered into a contract with

P. J. Carlin Construction Company for the erection of certain additions to the penitentiary located on that island. This company, designated in the contract as the general contractor, subcontracted part of its work to the Albee-Godfrey Whale Creek Company, Inc. The city also entered into direct contractual relationship with Edward V. McGovern Corporation for the plumbing work, with Charles H. Darmstadt, Inc., for the heating, etc., and with Arc Electrical Equipment Company for the power plant. All of these are named defendants.

The city itself performed no part of the work on the island, nor were any of its employees engaged in the building operations.

In each of the contracts the city provided: " Each contractor shall investigate the existing means of transportation to and from Rikers Island. The city shall not be held responsible for providing regular ferry service. The contractor must assume responsibility for the transportation from mainland to island of men and materials for all work done under this contract." The Albee-Godfrey Whale Creek Company, Inc., accepted this provision as part of its subcontract.

P. J. Carlin Construction Company entered into an agreement with the owners of the steamship *Observation* for the latter to convey the employees engaged in the work to and from the island for a round trip fare of ten cents paid by the men, and guaranteed a daily total of sixty dollars in fares. The boat was licensed by the United States authorities to carry passengers and the owners were licensed public ferrymen. Some time after the service was in operation and in use by the employees of all the contractors and subcontractors the boat sank, due to an explosion of the boiler, and the plaintiffs' intestates, all employees of Albee-Godfrey Whale Creek Company, Inc., were killed.

Taking up the motion of the defendant city of New York:

No duty on its part existed by reason of the relationship of the parties, as the plaintiffs' decedents were not employees of the city either at common law or under the Labor Law (*Iacono* v. *Frank & Frank Contracting Co.*, 259 N. Y. 377, 382); and by specific provisions in the contract the city negatived any contractual equation or obligation. But the plaintiffs proceed on the theory that the city, as supervising owner of Rikers island, owed a duty to the plaintiffs' decedents to use reasonable care in the selection and maintenance of a means of transportation to and from the island.

While it is clear that, irrespective of the relationship of servant and employer, the supervising owner who retains possession owes a duty to business invitees to exercise reasonable care in providing a safe place to work as well as a suitable means of ingress and

egress to that place of work (*Casperson* v. *La Sala Bros.*, 253 N. Y. 491; *De Lee* v. *Pardy Construction Co.*, 249 id. 103), which duty is non-delegable (*Wohlfron* v. *Brooklyn Edison Co., Inc.*, 238 App. Div. 463, 466; *Yaconi* v. *Brady & Gioe, Inc.*, 246 N. Y. 302, 305; *Buckley* v. *Cunard S. S. Co.*, 233 App. Div. 361, 364), it would be extending the doctrine beyond reason to hold that an accident happening on navigable waters of the United States had occurred on the controlled premises of an owner. In no case decided heretofore has such a duty been imposed upon the owner toward invitees not his employees. (Cf. *Matter of Ross* v. *Howieson*, 232 N. Y. 604; *Patrick* v. *Atlas Knitting Co.*, 164 App. Div. 753; *Reed* v. *Davis, etc., Co.*, 141 Misc. 36.) Manifestly, in the absence of a contractual obligation an owner is not obligated to provide transportation for laborers of his contractors or their subcontractors to and from his property. The obligation, where it exists at all, arises when the so-called business invitees enter upon property over which he has dominion.

Moreover, assuming *arguendo* the duty of the city as claimed by the plaintiffs and that such duty extended to the river as a portion of the owner's " premises," there is no evidence that the ways and approaches to the property were in a defective condition due to any act or omission of the city but only that the instrumentality adopted by an independent contractor to traverse the approach to its property was either negligently operated or unsuitable for that purpose. The city is not answerable for such negligence. It is settled that an owner is not liable for the negligence of an independent contractor in providing a defective appliance to its workmen where the owner has not exclusive possession and control of the appliance furnished. (*Hess* v. *Bernheimer & Schwartz Brewing Co.*, 219 N. Y. 415; *Iacono* v. *Frank & Frank Contracting Co., supra.*)

The city of New York neither selected the *Observation* nor had any supervision or control over its operation. The fact that vessels might land at the island only with the permission of the city does not give rise to any inference that the city selected this boat. It is a necessary implication from the contracts that the requisite permission to land would be given, if requested, and, moreover, there is no evidence that any contractor or vessel was denied such right. For obvious and cogent reasons, the municipal ferry plying between Rikers island and the mainland could not be used by the contractors, both because of its inadequacy and the nature of its use in transporting prisoners. In general, any owner may limit the entry onto his land by strangers or business invitees as he sees fit, and while the city is in no better position than any other landowner it certainly is in no worse position. The city made no

selection but merely advised the contractors that its ferry could not be availed of for their purpose in carrying men and materials to the island.

·The fact that, as in this case, an owner, through its agents, exercises a general supervision of the work for the purpose of assurance that the specifications of the contract are being properly performed, does not in and of itself establish the control and supervision necessary to make the owner liable for the negligent acts of its contractors (*Herman* v. *City of Buffalo*, 214 N. Y. 316, 320; *Uppington* v. *City of N. Y.*, 165 id. 222; *Moore* v. *Wills, Inc.*, 250 id. 426, 429), and there is no evidence that the city, through ratification or adoption, became responsible for the acts of its contractors in procuring the ill-fated boat. (*Vogel* v. *Mayor, etc., of New York*, 92 N. Y. 10.) The contractors, therefore, did not become the agents of the city in procuring the *Observation*. (*Hexamer* v. *Webb*, 101 N. Y. 377, 383; *Beach* v. *Velzy*, 238 id. 130.)

The cases cited by the plaintiffs in which the city was held liable are not applicable because the accident occurred either on premises owned and controlled by the city (*Galvin* v. *Mayor, etc., of New York*, 112 N. Y. 223), or on a vessel where, under the charter, the city was owner *pro hac vice*. (*Peloso* v. *City of New York*, 210 App. Div. 265.) Neither state of facts is present here.

There can be no actionable negligence in the absence of a legal duty to the plaintiffs which has been neglected or violated (*Palsgraf* v. *Long Island Railroad*, 248 N. Y. 339, 341; *Comstock* v. *Wilson*, 257 id. 231), and in the final analysis the plaintiffs' claim of liability against the city is untenable because it is predicated on a nonexistent duty to laborers engaged in the construction work to exercise reasonable care in providing them with transportation to and from the island. There was no assumption of obligation (*Famborille* v. *Atlantic, Gulf & Pacific Co.*, 155 App. Div. 833; affd., 213 N. Y. 666); it was expressly resisted and negatived by contract; there was no duty incident to the city's status to the men or the work they were engaged on; the site of the tragedy was beyond its jurisdiction, and the instrumentality thereof not of its choosing or adoption. The result is compelling and clear, therefore, that, as a matter of law, the city is not liable. Its motion to dismiss the complaint is granted with an exception to the plaintiffs.

The motions of the defendants Edward V. McGovern Corporation, Charles H. Darmstadt, Inc., Arc Electrical Equipment Company and Erickson Equipment Company are now considered:

It has not been established by the evidence that these defendants owed a legal duty to the plaintiffs' decedents and, therefore, assuming for the purpose of these motions a lack of due care on their part,

such negligence, if it be found to have existed, is not actionable. (*Palsgraf* v. *Long Island Railroad; Comstock* v. *Wilson, supra.*)

The duty of exercising due care with respect to third persons may arise due to the relationship of the parties, by assumption, or by contract, express or implied.

Concededly, plaintiffs' decedents were not employees of any one of these defendants.

Nor did any relationship exist between them and the owners of the steamship *Observation* or the P. J. Carlin Construction Company, so as to constitute them coadventurers in providing transportation with a resultant duty to maintain the boat in a safe condition. These defendants did not select the boat or exercise any supervision or control over its operation and, in fact, they did not commence work on the island until some time after the boat had already been engaged and was in use.

I regard as without substance the contention of the plaintiffs that a contractual duty on the part of these defendants to the decedents arose under section 14 of the general conditions of the contract, above quoted. The construction sought for by the plaintiffs is unreal and would do violence to its obvious intent. Reading the contract as a whole (and entirely without reference to Bulletin EEE), it is clear that the covenant is negative in implication. Each contractor was put on notice that the city ferry would not be available for the purpose of transporting its men and materials to the island and that it would have to arrange for such facilities. Essentially it was for the benefit of the city and, even assuming that it implied a positive duty, in no possible aspect is it conceivable that it established a contractual duty to provide suitable and safe transportation for the employees of other contractors. Plaintiffs' decedents not being beneficiaries within the intendment of the obligation, if any, imposed by section 14 in the case of these defendants, no cause of action could have been predicated thereon in their behalf. (*German Alliance Ins. Co.* v. *Howe Water Supply Co.*, 226 U. S. 220, 230; *Moch Co.* v. *Rensselaer Water Co.*, 247 N. Y. 160.)

Whatever the employer's obligation may be because of assumption (*Famborille* v. *Atlantic, Gulf & Pacific Co., supra*) or by reason of status to provide his workmen with a safe means of transportation to and from work (*Reed* v. *Davis, etc., Co., supra*), such duty does not inure to the benefit of persons bearing no relationship to him, and there is no evidence that these defendants, either expressly or impliedly, by contract or otherwise, assumed the obligation of transporting the employees of a subcontractor of another contractor. Hence, these defendants owed no duty to the decedents. And

negligence, not coupled with a breach of duty, does not give rise to a cause of action. Accordingly, the motions of defendants Erickson Equipment Company, Arc Electrical Equipment Company, Edward V. McGovern Corporation and Charles H. Darmstadt, Inc., must be granted and the complaint dismissed against them with an exception to the plaintiffs.

Finally, the plaintiffs' proof tenders to the defendants P. J. Carlin Construction Company and Albee-Godfrey Whale Creek Company, Inc., issues of fact which, under appropriate instructions, should be submitted to the jury. It is unnecessary to discuss the principles of law determining the liability, if any, of these defendants, since the court's view will be reflected in the charge, if at the close of the entire case it still appears proper to submit it to the jury. The motions of these defendants, therefore, are denied with an exception.